# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                              :
MICHAEL EDWARD SHARPE,        :
                              :      Civil Action No.
            Plaintiff,        :      10-CV-04276 (NLH)(JS)
                              :
      v.                      :      OPINION
                              :
EDIBERTO MEDINA, M.D., DIANE  :
HESS, R.N., MARYLIN ANGUD,    :
M.L.P., PAUL SHULTZ, WARDEN.  :
                              :
            Defendants.       :
_____:
```

**APPEARANCES:**

MICHAEL EDWARD SHARPE
56981-066
F.C.I. FAIRTON
P.O. BOX 420
FAIRTON, NJ 08320
*PRO SE*

ELIZABETH ANN PASCAL
U.S. DEPARTMENT OF JUSTICE
OFFICE OF THE U.S. ATTORNEY
401 MARKET STREET
P.O. BOX 2098
CAMDEN, NJ 08101
*Attorney for Defendants*

**HILLMAN, District Judge**

Plaintiff, Michael Edward Sharpe, is a prisoner incarcerated at Federal Correctional Institution Fairton, in Fairton (hereinafter "FCI Fairton"), New Jersey.  He alleges Defendants Ediberto Medina, M.D. (hereinafter "Dr. Medina"), Diane Hess, R.N. (hereinafter "Hess") and Marilyn Angud, M.L.P. (hereinafter "Angud") were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  He also alleges that

former Warden Paul Schultz (hereinafter "Schultz") acted with deliberate indifference by failing to promulgate a policy to provide inmates with on-site medical care between the hours of 12:00 A.M. and 06:00 A.M.  Defendants move for summary judgment [Doc. 19].  For the reasons expressed below, the Court will grant Defendants' Motion.

## I.   JURISDICTION

Plaintiff has alleged several Eighth Amendment deliberate indifference claims pursuant to 42 U.S.C. § 1983.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II.  BACKGROUND[1]

### A. Facts

On May 15, 2009, Plaintiff, complaining of chest pain, presented himself to FCI Fairton's health services unit.  After a brief consultation with a doctor, an electrocardiogram (hereinafter "EKG") was performed.  The test results were abnormal, and Plaintiff was quickly transported to the emergency room at South Jersey Regional Medical Center in Vineland, New

---

[1] Given that the present matter comes before the Court by way of Defendants' Motion for Summary Judgment, Plaintiff's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *See* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  As discussed infra, however, Plaintiff failed to submit an affidavit or any other evidence supporting the allegations in his Complaint.  We accept Plaintiff's uncontested allegations as true for purposes of this Motion, and note where the failure to submit evidence impacts his opposition to Defendants' Motion.

Jersey.  Upon his arrival to the hospital, Dr. Gladwyn D. Baptist (hereinafter "Dr. Baptist"), a cardiologist, examined Plaintiff. After he performed an echocardiogram, Dr. Baptist concluded that Plaintiff did not suffer a heart attack, but has atypical chest pain not caused by a blood flow obstruction.[2]  Dr. Baptist prescribed Metroprolol[3], a beta blocker.  Plaintiff then returned to FCI Fairton, where he met with Defendant Angud for a post-consultation visit.  Medical records indicate Defendant Angud ordered Metroprolol for Plaintiff.

The parties, however, dispute whether Defendant Angud informed Plaintiff that he needed to retrieve the medication from the prison's pharmacy.[4]  In his Complaint, Plaintiff alleges that he was never informed that he had to acquire the Metroprolol directly from the prison pharmacy.  In her affidavit, Defendant Angud asserts that when she "put[s] in a new medication order," she informs "the inmate to pick up the medication at the pharmacy or to come to the medication line." Doc. 20, Dec. of Marilyn Angud ¶ 6.  Plaintiff's medical records indicate he failed to

---

[2]  Plaintiff's echocardiogram specifically revealed an asymmetrical hypertrophy of the apical region of the left ventricle because of a rare genetic variation.

[3]  Metroprolol is a medication prescribed to treat high blood pressure or prevent angina.

[4]  Metroprolol was not a medication dispensed in the medicine line.  Rather, prison procedures required that Plaintiff pick up his medication directly from the prison pharmacy.

3

retrieve the Metoprolol from the prison pharmacy.[5]

According to Plaintiff's Complaint, during the early morning hours of June 3, 2009, he experienced chest pain, which prompted him to contact a corrections officer and request medical assistance.  Unable to contact the prison's health services unit, the corrections officer informed Plaintiff that he had to wait until morning for an evaluation because there were no medical professionals on duty.  At 6:00 A.M., the health services unit was again contacted, and Plaintiff was sent for an evaluation.

Upon his arrival to the health services unit, Defendant Diane Hess informed him that he had to wait until she completed dispensing medication to the other inmates before she could evaluate his condition.  Approximately an hour later, Defendant Dr. Medina arrived and concluded that Plaintiff's condition was not urgent.  Shortly thereafter, the prison was placed on institutional lock-down, and Plaintiff was required to return to his cell.[6]

Later that day, Plaintiff again returned to the health services unit.  Medical staff performed another EKG, which

---

[5]  If an inmate fails to obtain prescribed medication, it is returned to the pharmacy.  Records indicate Plaintiff's medication was filled on May 18, 2009, and returned on June 3, 2009.

[6]  Plaintiff alleges that he was forcibly returned to his cell while he "was still bent over holding his chest and in severe pain." Doc. 1, Compl. ¶ 10.

produced the same irregularities as the first examination.
Plaintiff also admitted his noncompliance with respect to the
Metoprolol.  Over the next several months, Plaintiff continuously
returned to the health services unit complaining of chest pain.
The records from these visits indicate the seriousness or
severity of his condition never increased.

### B. Procedural History

Plaintiff filed his Complaint on August 20, 2010, alleging
Defendants Dr. Medina, Hess and Angud were deliberately
indifferent to his serious medical needs in violation of the
Eighth Amendment, and that Defendant Schultz acted with
deliberate indifference by failing to promulgate a policy to
provide inmates with on-site medical care from 12:00 A.M. to
06:00 A.M.  On December 20, 2010, Defendants moved for summary
judgment [Doc. 19].  Several months later, Plaintiff filed his
opposition to Defendants' Motion, which included four
declarations from inmates averring that prison cells at FCI
Fairton do not contain any working emergency panic buttons.  In
their March 14, 2011 reply brief, Defendants contended that the
Court should dismiss Plaintiff's claim regarding the emergency
panic buttons because he failed to exhaust his administrative
remedies and failed to raise the issue in his Complaint.  In
response, Plaintiff filed a Motion "requesting a temporary stay
in the proceedings to allow exhaustion of administrative

5

remedies" [Doc. 27] with respect to the panic button issue. Defendants oppose the Motion.

**III. DISCUSSION**

    **A. Exhaustion of Administrative Remedies**

    As a primary matter, the Court must first address Plaintiff's Motion "requesting a temporary stay in the proceedings to allow exhaustion of administrative remedies" [Doc. 27].  "The Prison Litigation Reform Act ("PLRA") prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials until such administrative remedies as are available are exhausted . . . [and to] satisfy this requirement, a prisoner must exhaust all available administrative remedies prior to filing suit, including a Bivens action." Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006) (internal citations and quotations omitted); see 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); see also Woodford v. Ngo, 548 U.S. 81, 88 (2006) ("[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court").  Consequently, if a prisoner

6

files suit before he fully exhausts his administrative remedies, the Court must dismiss the Complaint.  Exhaustion after the filing of a lawsuit does not and cannot cure any initial defect. Ahmed v. Dragovich, 297 F.3d 201, 209 n. 9 (3d Cir. 2002); Roscoe v. Dobson, 248 Fed. Appx. 440, 442 (3d Cir. 2007); Oriakhi, 165 Fed. Appx. at 993 ("The fact that he completed the administrative review process before the District Court reached the exhaustion question is of no consequence.  Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").

Presently, Plaintiff admits that he failed to exhaust his administrative remedies with respect to his allegations that the panic buttons within the prison cells are not functional.  To cure this defect, he requests a temporary stay to exhaust all pertinent administrative remedies.  However, as the Court in Oriakhi noted, exhaustion of administrative remedies after the filing of a Complaint cannot fulfill PLRA's exhaustion requirement.  The Court will therefore deny Plaintiff's Motion "requesting a temporary stay in the proceedings to allow exhaustion of administrative remedies" [Doc. 27].[7]

_____

[7]  The Court also notes that Plaintiff's Motion may be denied on the alternative basis that he never included in his Complaint any allegations pertaining to the functionality of the panic buttons.  Plaintiff may not amend his pleadings during the process of briefing Defendants' properly supported motion for

**B.    Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v.

---

summary judgment.  Nor is leave to amend proper in light of the futility of an unexhausted claim. *See* Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000) (noting that a district court need not grant leave to amend a complaint when doing so would be futile).

Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C. Eighth Amendment Claims

Plaintiff has brought his constitutional claims against Defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides that a right of action against federal officials exists parallel to the right of action against state actors under 42 U.S.C. § 1983. Couden v. Duffy, 446 F.3d 483, 491 (3d Cir. 2006); see Carlson v. Green, 446 U.S. 14, 20 (1980) (holding that Bivens provides a remedy for violations of the Eighth Amendment for the deliberate indifference to a serious medical need); see also Bradley v. United States, 164 F.Supp.2d. 437, 445 (D.N.J. 2001) (citations omitted) ("Like 42 U.S.C. § 1983, a Bivens action is not a source of substantive rights, but is a mechanism by which plaintiffs can assert federal rights conferred upon them by the

9

Constitution or federal statutory law").

The Eighth Amendment's proscription against cruel and unusual punishment requires the government to provide prison inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97 (1976); *see* Helling v. McKinney, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment"). To establish a violation of his Eighth Amendment right to adequate medical care, a plaintiff must show (1) a serious medical need, and (2) acts or omissions by prison officials that indicated deliberate indifference to that need. Estelle, 429 U.S. at 103-04; Natale v. Camden County Corr. Facility*,* 318 F.3d 575, 582 (3d Cir. 2003). In the instant matter, Plaintiff claims Defendants Dr. Medina, Hess and Angud violated his Eighth Amendment rights because they were deliberately indifferent to his serious medical needs, and that Defendant Schultz acted with deliberate indifference by failing to promulgate a policy to provide inmates with on-site medical care from 12:00 A.M. to 06:00 A.M.

### 1.   **Serious medical need**

To prove his claim, a plaintiff must first establish that he had a serious medical need. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment

10

violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992).  A serious medical need is a need diagnosed by a physician that the physician believes to require medical treatment, or a need that is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted); see also Atkinson v. Taylor, 316 F.3d 257, 273 (3d Cir. 2003). Additionally, the medical need is considered serious where denial or delay causes an inmate to suffer a life-long handicap or permanent loss. Monmouth County, 834 F.2d at 347.  Presently, Defendants do not contest that Plaintiff required treatment for a serious medical need.

## 2.  Deliberate indifference

A plaintiff must also demonstrate that the defendants' behavior constituted deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence, it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 836 (1994) (describing deliberate indifference as "somewhere between the poles of negligence at one end and purpose or knowledge at the other").  A prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp. 2d

217, 228 (D.N.J. 2000).  Similarly, "mere disagreements over
medical judgment[s] do not state Eighth Amendment claims." White
v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will
disavow any attempt to second-guess the propriety or adequacy of
a particular course of treatment . . . which remains a question
of sound professional judgment." Inmates of Allegheny County Jail
v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation
and citation omitted).  Even if a doctor's judgment concerning
the proper course of a prisoner's treatment ultimately is shown
to be mistaken, at most what would be proven is medical
malpractice and not an Eighth Amendment violation. Estelle, 429
U.S. at 106 ("Medical malpractice does not become a
constitutional violation merely because the victim is a
prisoner"); White, 897 F.2d at 110.  Consequently, claims of
negligence, without a more culpable state of mind, do not
constitute deliberate indifference. Rouse v. Plantier, 182 F.3d
192, 197 (3d Cir. 1999).

The Third Circuit has found deliberate indifference where a
prison official: (1) knows of a prisoner's need for medical
treatment but intentionally refuses to provide it; (2) delays
necessary medical treatment for non-medical reasons; or (3)
prevents a prisoner from receiving needed or recommended
treatment. See Rouse, 182 F.3d at 197.  The court has also held
that needless suffering resulting from the denial of simple

12

medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266; *see* Monmouth County, 834 F.2d at 347 ("[D]eliberate indifference is demonstrated 'when . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment'").

### i. Defendant Angud

Plaintiff alleges Defendant Angud acted with deliberate indifference to his serious medical condition when she purposefully failed to inform Plaintiff that Dr. Baptist prescribed the beta blocker, Metroprolol, and that he needed to retrieve the medication from the prison pharmacy.  In response, Defendant Angud contends that when she "put[s] in a new medication order", it is her practice to "tell the inmate to pick up the medication at the pharmacy or to come to the medication line." Doc. 20, Dec. of Marilyn Angud ¶ 6.

Plaintiff's claim of deliberate indifference fails. Entirely absent from the record is any evidence that Defendant Angud failed to inform Plaintiff about the medication. *See* Bello v. Romeo, No. 10-1933, 2011 WL 1519389, at * 3 (3d Cir. April 22, 2011) (noting that "pro se litigants are nonetheless required to comply with the procedures outlined in Rule 56 of the Federal Rules of Civil Procedure" and that allegations in a complaint of

misconduct are not sufficient to defeat summary judgment); *see also* <u>Williams v. Pennsylvania</u>, 289 Fed. Appx. 483, 484 (3d Cir. 2008) ("Statements made in a complaint, however, are merely allegations and not evidence"). Even if Defendant Angud never told Plaintiff about the Metroprolol, her mistake only constitutes mere negligence, not deliberate indifference. <u>Rouse</u>, 182 F.3d at 197 ("It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference'"); *see* <u>Hartman v. Corr. Med. Servs.</u>, 366 Fed. Appx. 453, 455 (3d Cir. 2010) (holding that lapses in medication "do not invoke the Eighth Amendment"). There are no facts or evidence on record to suggest that Defendant Angud acted recklessly, intentionally or deliberately. <u>Rouse</u>, 182 F.3d at 197 ("Deliberate indifference, therefore, requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk") (internal citations and quotations omitted) (quoting in part <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)); <u>Bramson v. Sulayman</u>, No. 04-5196, 2007 WL 203938, at * 3 (D.N.J. Jan. 23, 2007) ("Plaintiff has the burden of proving that Defendants were deliberately indifferent to his condition. To meet that burden, Plaintiff must show that Defendants had a state of mind equivalent to reckless disregard of a known risk of harm, rather than just mere negligence"). The Court, therefore, will

enter summary judgment in favor of Defendant Angud with respect
to Plaintiff's deliberate indifference claim.

### ii. Defendants Hess & Dr. Medina

On the morning of June 3, 2009, Plaintiff arrived at FCI
Fairton's health services unit complaining of chest pain.
Defendant Hess, the only medical professional on duty, advised
Plaintiff that he would have to wait because she was extremely
busy providing inmates with their daily medications.  As he
waited, another inmate complained of chest pains, and was treated
and released before Plaintiff received any care.  Shortly
thereafter, Defendant Dr. Medina arrived for work.  According to
Plaintiff, Defendant Dr. Medina refused to provide Plaintiff with
medical treatment and claimed that Plaintiff was merely "looking
for attention." Doc. 1, Compl. ¶ 10.  Several minutes later, FCI
Fairton went on institutional lockdown, and Dr. Medina informed
Plaintiff that if he did not return to his cell, he could call
for a corrections officer.  Plaintiff returned to his cell and
now asserts that the conduct by Defendants Hess and Dr. Medina
constituted deliberate indifference to Plaintiff's serious
medical condition.  The Court disagrees.

In determining whether Plaintiff's care was adequate, the
Court is mindful that Defendants Hess and Dr. Medina are medical
professionals.  They are, therefore, entitled to prioritize the
needs of the individuals who seek their attention, and attend

15

first to inmates in need of the most urgent care.  Moreover, as
members of the health services unit, Defendants Hess and Medina
must respond to the medical problems of the entire prison
population, not just Plaintiff's needs.  Thus, in her
professional judgment, and with prior knowledge of his condition,
Defendant Hess determined that Plaintiff could wait for an
examination until she finished distributing the morning
medications and responding to the other inmate complaining of
chest pains.  In other words, Defendant Hess deemed Plaintiff's
condition a lower priority than the needs of other inmates
seeking care. *See* Hampton v. Holmesburg Prison Officials, 546
F.2d 1077, 1080 (3d Cir. 1976) (noting that disagreement with
sound medical judgment cannot constitute deliberate
indifference); *see also* Bob v. Kuo, 387 Fed. Appx. 134, 136 (3d
Cir. 2010) (finding deliberate indifference lacking when the
doctor's treatment decision was based on other medical evidence).
Defendant Dr. Medina concluded similarly.  Upon arriving to work
and viewing Plaintiff, Defendant Dr. Medina, also knowledgeable
about Plaintiff's medical history, concluded that despite
complaints of pain, Plaintiff appeared stable and could wait to
receive a full examination. *See* Heffran v. Mellinger, 324 Fed.
Appx. 176, 180 (3d Cir. 2009) (finding that a nurse's decision to
have plaintiff wait two days to see a doctor when his condition
appeared stable was not deliberate indifference).  Thus,

16

Defendant Medina's decision to make Plaintiff wait for treatment was based upon medical reasons.

These types of medical decisions cannot constitute deliberate indifference.  The medical staff had provided emergency medical care for Plaintiff the month before when the symptoms first arose, knew that the cause had been diagnosed and knew that Plaintiff had been returned to the population with an appropriate prescription to address his condition.  Plaintiff's mere disagreement with Defendants Hess's and Dr. Medina's sound medical judgment regarding the severity and urgency of recurring symptoms associated with a known medical condition, without providing any additional evidence that they purposefully, recklessly or deliberately withheld or denied treatment is insufficient to defeat a motion for summary judgment. *See* Bello, 2011 WL 1519389, at * 3 (noting that "pro se litigants are nonetheless required to comply with the procedures outlined in Rule 56 of the Federal Rules of Civil Procedure" and that allegations in a complaint of misconduct are not sufficient to defeat summary judgment); *see also* Williams, 289 Fed. Appx. at 484 ("Statements made in a complaint, however, are merely allegations and not evidence"); *see also* Albrecht v. Corr. Med. Servs., No. 06-2772, 2009 WL 1834320, at * 6 (D.N.J. June 25, 2009) (entering summary judgment in favor of defendants because the plaintiff failed to submit any evidence in opposition to

17

defendant's motion for summary judgment).  The Court, therefore, will enter summary judgment in favor of Defendants Hess and Dr. Medina with respect to Plaintiff's deliberate indifference claim because all the evidence in the case shows they utilized sound medical judgment to determine a proper course of care, and Plaintiff's claims are merely a disagreement with that decision.

### iv. Defendant Schultz

Plaintiff alleges that when he awoke with chest pains in the early morning of July 3, 2009, medical staff were not available to provide him with treatment.  Accordingly, Plaintiff contends that Defendant Schultz acted with deliberate indifference by failing to implement a policy to provide inmates with medical care between 12:00 A.M. to 06:00 A.M.

Plaintiff's claim fails because, pursuant to BOP Program Statement 6010.02, Health Services Administration (hereinafter "Statement"),[8] FCI Fairton promulgated an emergency care plan (hereinafter "Plan") detailing the procedures for an inmate to obtain medical assistance when the health services department is closed.  According to the Plan, if urgent medical attention is required between 12:00 A.M. and 06:00 A.M., the corrections

---

[8]  The Statement provides that on-site medical coverage need only be provided sixteen hours per day when: (1) arrangements are made with a local medical facility for coverage; (2) emergency transportation is available; and (3) a procedure is in place to have CPR certified staff during the hours medical staff are not available.

18

officer is to contact the mid-level practitioner to determine: (1) if the inmate needs to go to a hospital, (2) if a doctor must come to the prison to provide treatment, and (3) if the inmate can be evaluated the next day.  The Plan further requires that all FCI Fairton staff members be trained in CPR.  In short it appears uncontested that FCI Fairton had in place a procedure to provide urgent medical care when needed during the overnight hours.  Consequently, because a policy existed for providing medical treatment to inmates between 12:00 A.M. to 06:00 A.M, and Plaintiff has failed to show that implementation or use of that plan deliberately denied him needed care during those hours, the Court will enter summary judgment in favor of Defendant Schultz with respect to Plaintiff's deliberate indifference claim.

### D. Qualified Immunity

"'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Montanez v. Thompson, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009)).  "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they

19

perform their duties reasonably." <u>Pearson</u>, 129 S. Ct. at 815
(2009).  This doctrine provides a government official immunity
from suit rather than a mere defense from liability. <u>Id.</u>  A Court
must undertake a two-step inquiry to determine the applicability
of qualified immunity:

> First, a court must decide whether the facts that a
> plaintiff has alleged or shown make out a violation of
> a constitutional right. Second, if the plaintiff has
> satisfied this first step, the court must decide
> whether the right at issue was clearly established at
> the time of a defendant's alleged misconduct. Qualified
> immunity is applicable unless the official's conduct
> violated a clearly established constitutional right.[9]

<u>Montanez</u>, 603 F.3d at 250. "Where a defendant asserts a qualified
immunity defense in a motion for summary judgment, the plaintiff
bears the initial burden of showing that the defendant's conduct
violated some clearly established statutory or constitutional
right." <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997).
"Only if the plaintiff carries this initial burden must the
defendant then demonstrate that no genuine issue of material fact
remains as to the 'objective reasonableness' of the defendant's
belief in the lawfulness of his actions." <u>Id.</u>  In determining
whether a defendant is entitled to qualified immunity, the court
is "permitted to exercise their sound discretion in deciding

---

[9]  Although the aforementioned sequence of the qualified
immunity analysis is often appropriate, it is not rigid and
inflexible; rather, a court may exercise its discretion in
deciding which of the two prongs should be addressed first in
light of a case's particular circumstances. <u>Montanez</u>, 603 F.3d at
250 (quoting <u>Pearson</u>, 129 S. Ct. at 818).

which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818.  If the answer to either question is "no," the analysis may end there. See id. at 823 (finding that because the unlawfulness of the officers' conduct was not clearly established, the officers were entitled to qualified immunity, without having to answer the question of whether the officers violated the Plaintiff's constitutional rights).

In this matter, the Court has determined that Plaintiff's allegations are insufficient to establish a violation of his Eighth Amendment rights.  Consequently, Defendants Dr. Medina, Hess, Angud and Schultz are entitled to qualified immunity and summary judgment will be granted on that basis.

**IV. CONCLUSION**

For the reasons expressed above, Defendants' Motion for Summary Judgment [Doc. 19] will be granted and Plaintiff's motion for a stay denied.  An appropriate order will be entered.


Date: August 8, 2011                    s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.